# IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF TENNESSEE

## NASHVILLE DIVISION

FILED

2026 APR 22 AM 11: 28

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

Civil Action No. 3:26cv-497

GIDEON J. SIPIN,

*Plaintiff,*

v.

TESLA, INC.; and

WELLS FARGO BANK, N.A. d/b/a Wells Fargo Auto

*Defendants.*

COMPLAINT FOR WARRANTY BREACH, VIOLATION OF THE

TENNESSEE MOTOR VEHICLE QUALITY ASSURANCE ACT,

MAGNUSON-MOSS WARRANTY ACT, TENNESSEE CONSUMER

PROTECTION ACT, AND DEMAND FOR JURY TRIAL

1.     Plaintiff Gideon J. Sipin appears in this matter pro se — without the assistance of counsel. He is not an attorney. He has done his best to present the facts and applicable law accurately and completely, and he respectfully requests that this Court construe this Complaint liberally in the interest of justice, as courts are required to do for pro se litigants. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

## I. PARTIES

2.     Plaintiff Gideon J. Sipin is an individual residing at 5200 Meadow Brook Road, Birmingham, Alabama 35242. Plaintiff is a resident and citizen of the State of Alabama.

3.     Defendant Tesla, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Austin, Texas. Tesla, Inc. designs, manufactures, markets, warrants, and sells electric motor vehicles, including the 2023 Tesla Model Y. Tesla, Inc. is subject to personal jurisdiction in Tennessee by virtue of its direct-to-consumer sales operations in Tennessee, including through Tesla Motors TN, Inc., its Tennessee affiliate, and because the purchase, delivery, and warranty obligations giving rise to this action occurred in Tennessee. Tesla, Inc. is a citizen of Delaware and Texas for purposes of diversity jurisdiction.

4.     Defendant Wells Fargo Auto is a division of Wells Fargo Bank, N.A., a national banking association headquartered in Sioux Falls, South Dakota. Wells Fargo Auto is the assignee of the Retail Installment Sale Contract executed in connection with Plaintiff's purchase of the subject vehicle. As the holder of the consumer credit contract, Wells Fargo Auto is subject to all

2

claims and defenses Plaintiff could assert against Tesla Motors TN, Inc. as seller, pursuant to the Federal Trade Commission Holder Rule, 16 C.F.R. § 433.2, up to amounts paid by Plaintiff under the contract.

## II. JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises in part under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., a federal statute. Plaintiff's individual claim under the Magnuson-Moss Warranty Act exceeds $50,000, conferring federal jurisdiction under 15 U.S.C. § 2310(d)(1)(B).

6.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 exclusive of interest and costs, and the action is between citizens of different states. Plaintiff is a citizen of Alabama. Defendant Tesla, Inc. is a citizen of Delaware and Texas. Defendant Wells Fargo Auto is a citizen of South Dakota. Complete diversity exists.

7.  Venue is proper in the Middle District of Tennessee, Nashville Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this action occurred in this district. The vehicle was purchased at Tesla Motors TN, Inc., located at 1641 Westgate Circle, Brentwood, Tennessee 37027, which is within this district. The Retail Installment Sale Contract was executed in this district. Delivery of the vehicle occurred in this district.

8.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims as to form part of the same case or controversy.

## III. PLAINTIFF'S OBJECTION TO ARBITRATION

**9.** The Tesla Motor Vehicle Order Agreement contains a mandatory arbitration clause. Plaintiff objects to that clause and invokes this Court's jurisdiction on the following independent grounds, any one of which is sufficient to defeat a motion to compel arbitration:

(a) **Substantive Unconscionability — Extreme Non-Mutuality.** The Order Agreement's limitation of liability clause purports to cap Plaintiff's recovery at reimbursement of only the Order Fee, Order Deposit, and Transportation Fee — approximately $1,450 on a $64,440 vehicle — while imposing no corresponding limitation on Tesla's remedies against Plaintiff. This extreme non-mutuality renders the arbitration clause unconscionable under Tennessee law. In Taylor v. Butler, 142 S.W.3d 277 (Tenn. 2004), the Tennessee Supreme Court held that an arbitration clause in a consumer contract of adhesion was unconscionable where it reserved a judicial forum for the seller while confining the buyer to arbitration. The Taylor court found that an agreement requiring the buyer to arbitrate virtually all claims while allowing the seller access to judicial remedies was unconscionable and unenforceable.

The Tesla Order Agreement presents a more extreme version of the same pattern — capping Plaintiff's recovery at $1,450 while Tesla faces no such cap and retains full access to courts to enforce its own rights. Under the balancing test articulated in Berent v. CMH Homes, Inc., No. E2013-01214-SC-R11-CV (Tenn. 2015), the degree of one-sidedness here is not commercially reasonable and far exceeds the narrow carve-outs Tennessee courts have found permissible.

4

**(b) Procedural Unconscionability — Contract of Adhesion.** The Tesla Order Agreement is a standard-form contract of adhesion offered on a take-it-or-leave-it basis with no opportunity to negotiate, modify, or reject the arbitration clause as a condition of purchasing the vehicle. Plaintiff, an individual consumer, had no meaningful bargaining power against one of the world's largest vehicle manufacturers. Tennessee courts will not enforce adhesion contracts whose terms are beyond the reasonable expectations of an ordinary person or are oppressive to the weaker party. Buraczynski v. Eyring, 919 S.W.2d 314, 320 (Tenn. 1996). A consumer purchasing a vehicle has no reasonable expectation that a buried arbitration clause in a standard form agreement will cap his recovery at $1,450 on a $64,440 vehicle while stripping him of all statutory remedies. See also Brenda Gibbs v. Capitol Resort Group, LLC (Tenn. Ct. App.) (refusing to enforce arbitration provision where contract was offered on take-it-or-leave-it basis with no opportunity to bargain).

**(c) Statutory Rights Under the Tennessee Motor Vehicle Quality Assurance Act Cannot Be Waived.** The Tennessee Motor Vehicle Quality Assurance Act, Tenn. Code Ann. § 55-24-101 et seq., provides mandatory statutory remedies — replacement vehicle or full refund plus reasonable attorney fees — specifically enacted by the Tennessee Legislature to protect consumers against manufacturer overreach. These are not merely contractual rights that Plaintiff agreed to arbitrate. They are legislative protections that exist independent of and superior to the parties' contract. A pre-dispute arbitration clause in a standard form adhesion agreement cannot extinguish mandatory statutory remedies created by the Tennessee Legislature for the protection of consumers. To hold otherwise would render the Tennessee Motor Vehicle Quality Assurance Act a nullity — any manufacturer could eliminate Lemon Law protections simply by inserting an arbitration clause with a

5

$1,450 damages cap in its standard purchase agreement. The Legislature did not intend that result. Furthermore, under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., a consumer who prevails on a written warranty claim is entitled to mandatory attorney fees — a federal statutory right that cannot be prospectively waived. An arbitration agreement that operates as a prospective waiver of federal statutory rights is unenforceable as contrary to public policy. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985) (arbitration agreements may not prospectively waive federal statutory rights).

**(d) Waiver by Non-Response.** Tesla received Plaintiff's formal warranty demand letter on or about March 21, 2026 — a demand letter that explicitly referenced the Order Agreement and demanded warranty relief. As of the date of this Complaint, Tesla has not responded to the demand, has not invoked the arbitration clause, has not directed Plaintiff to any contractual dispute resolution process, and has not taken any step to initiate arbitration. Tesla's complete and deliberate non-response to a formal warranty demand constitutes waiver of any right to compel arbitration. Tesla's complete non-response to Plaintiff's formal warranty demand, and its failure to invoke arbitration at any point prior to the filing of this action, constitutes conduct inconsistent with any intent to arbitrate. See generally Morgan v. Sundance, Inc., 596 U.S. 411 (2022) (holding that a party may waive its arbitration right through litigation conduct inconsistent with that right; courts may not create arbitration-specific procedural rules that favor arbitration over other contracts).

**(e) Class Action Waiver Unenforceability.** To the extent the Tesla Order Agreement contains a class action waiver within the arbitration clause, Plaintiff reserves all rights to challenge that waiver. The Northern District of California court that addressed a similar

6

class action against Tesla in March 2024 sent plaintiffs to individual arbitrations — it did not dismiss their claims on the merits and expressly preserved the right to issue injunctive relief against Tesla if individual arbitrations succeed. The class action waiver in Tesla's standard form contract is part of an integrated scheme designed to avoid classwide accountability for systemic defects affecting thousands of consumers — a purpose contrary to the public policy underlying both the Tennessee Consumer Protection Act and the Magnuson-Moss Warranty Act. Plaintiff raises these issues in anticipation of a potential motion to compel arbitration and to provide the Court with a complete context for the dispute.

## IV. FACTUAL BACKGROUND

### A. The Purchase — A New Electric Vehicle Under an 8-Year Battery Warranty

10. On or about December 1, 2022, Plaintiff purchased a new 2023 Tesla Model Y, VIN 7SAYGDEE8PF603755, from Tesla Motors TN, Inc., located at 1641 Westgate Circle, Brentwood, Tennessee 37027. The total purchase price of the vehicle was $60,440.00.

11. The vehicle was financed pursuant to a Retail Installment Sale Contract — Order No. RN116791180 — under which Wells Fargo Auto is the assignee. The amount financed was $60,195.00, at an annual percentage rate of 4.99%, with 72 monthly payments of $971.15. The total sale price was $70,172.80.

12. The vehicle was covered by Tesla's Battery and Drive Unit Warranty — 8 years or 120,000 miles — guaranteeing retention of at least 70% of original battery capacity. This warranty is an express written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C.

§ 2301(6), and a manufacturer's warranty within the meaning of the Tennessee Motor Vehicle Quality Assurance Act, Tenn. Code Ann. § 55-24-102.

### B. Documented Battery Degradation — Systematic Range Underdelivery

13. 13. Plaintiff operated the vehicle as a rental host on the Turo platform. Multiple renters, through the Turo platform's documented communication system, reported that the vehicle was stopping to charge far sooner than its rated range required — consistently and materially underdelivering the 358-mile EPA-rated range. Renters noted the vehicle appeared unable to hold a full charge and depleted faster than any comparable electric vehicle they had previously operated.

14. The battery degradation and range underdelivery experienced by Plaintiff is consistent with a systemic defect in the 2023 Model Y Long Range battery system. The National Highway Traffic Safety Administration has received multiple complaints on this exact vehicle and model year regarding battery performance and loss of drive power.

15. In July 2023, Reuters reported that Tesla maintained a secret internal team specifically tasked with suppressing range complaint investigations — a documented, institutional acknowledgment of the systemic nature of the battery range problem in Tesla vehicles, including the 2023 Model Y. This willful suppression of range complaints, at the time Plaintiff's vehicle was demonstrably underperforming its warranted range, is directly relevant to Plaintiff's claims under the Tennessee Consumer Protection Act. This information is provided as contextual support for the plausibility of Plaintiff's experience and is not relied upon as a standalone basis for liability.

16. Plaintiff has since become aware that Tesla's battery range underdelivery and battery stall issues affecting the 2023 Model Y Long Range have been the subject of a proposed class action lawsuit filed in the United States District Court for the Northern District of California in

8

August 2023. That class action alleged that Tesla fraudulently overstated driving range estimates, maintained a secret internal team to suppress range complaints, and breached vehicle warranties. The class action was not dismissed on the merits — it was stayed pending individual arbitrations by order of the court in March 2024. The court expressly preserved the right to issue injunctive relief against Tesla if individual arbitrations succeed. Tesla's conduct giving rise to that class action is the same conduct that caused the battery defect and range underdelivery experienced by Plaintiff in this action.

### C. The Battery Safety Incident — August 2023

17. In approximately August 2023 — approximately seven to eight months after purchase — the vehicle's battery stalled completely while Plaintiff was driving a few miles from his home on a surface road. The vehicle lost all drive power without warning. Plaintiff was fortunate that no vehicle was following him or they might have collided with the vehicle's rear. Plaintiff activated the emergency flasher lights and, after waiting a few minutes, the vehicle restarted. Plaintiff drove the vehicle home and did not continue to his planned destination.

18. Plaintiff filed a complaint with the National Highway Traffic Safety Administration documenting this safety incident, attached hereto as Exhibit E. NHTSA assigned the complaint NHTSA ID No. 11726359, with an incident date of August 1, 2023, Consumer Location: Birmingham, Alabama.

19. A complete loss of drive power on a vehicle less than eight months old — under an eight-year battery warranty — is not a minor defect. It is a catastrophic warranty failure demonstrating that the battery had not retained 70% of its original capacity within the warranty period and that the vehicle was defective and unreasonably dangerous.

9

## D. Tesla's Failure to Repair or Replace — No Response

**20.** The battery failed to meet the 70% retention warranty within eight months of purchase. Tesla did not repair the battery. Tesla did not replace the battery. Tesla did not offer any remedy.

**21.** Because of the safety risk associated with the battery defect, Plaintiff ceased use of the vehicle. Any reference to 'surrender' in pre-suit correspondence referred to Plaintiff's cessation of use of the vehicle due to safety concerns arising from the battery stall incident and the unresolved battery defect, and not a voluntary or elective relinquishment of the vehicle.

**22.** On March 21, 2026, Plaintiff sent a formal warranty demand letter to Tesla, Inc. by certified mail, return receipt requested, demanding a replacement vehicle with a documented functional battery delivering its rated range. Tesla, Inc. has not responded to this demand.

**23.** On March 25, 2026, Plaintiff filed a complaint with the Consumer Financial Protection Bureau against Tesla, Inc. regarding this matter. Tesla has not responded.

## E. The Damages

**24.** As a direct and proximate result of the defective vehicle and Tesla's failure to honor its warranty obligations, Plaintiff has suffered the following damages:

**(a)** Order Fee of $250.00.

**(b)** Monthly payments of $971.15 made prior to cessation of use of the vehicle due to safety concerns — the total amount to be established through payment records.

**(c)** Lost Turo rental business income. A 2023 Tesla Model Y operating on the Turo platform in Birmingham, Alabama generates approximately $80 to $120 per day when

10

booked. At 50 percent occupancy over the period of ownership, lost rental income attributable to the battery defect and Tesla's failure to honor its warranty exceeds $9,600.00 — to be established through discovery and evidence at trial.

**(d)** Consequential damages to Plaintiff's credit arising from Wells Fargo Auto's adverse credit reporting in connection with the cessation of use of this defective vehicle due to safety concerns.

**(e)** Plaintiff states for the record that his preferred resolution is not a windfall recovery but rather what he originally bargained for — a certified, defect-free replacement 2023 Tesla Model Y or comparable model year vehicle with a documented functional battery delivering its rated range, with slightly higher mileage acceptable, at market value financing terms no less favorable than the original agreement, upon which Plaintiff will resume payments. Plaintiff raised this resolution in his demand letter of March 21, 2026. Tesla, Inc. has not responded.

**(f)** All other damages to be proven at trial.

## V. CLAIMS FOR RELIEF

### COUNT I — EXPRESS WARRANTY BREACH Tesla, Inc.

**25.** Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

**26.** Tesla's Battery and Drive Unit Warranty expressly warrants that the 2023 Model Y Long Range battery will retain at least 70% of its original capacity for 8 years or 120,000 miles. A battery that causes a complete loss of drive power within eight months of purchase — and that consistently fails to deliver its rated range under normal operating conditions — is consistent with

11

a failure to retain the warranted 70% capacity and reflects a material defect in the battery system. It has failed entirely.

27. Tesla's warranty obligation is to repair or replace the defective battery. Tesla did not repair the battery. Tesla did not replace the battery. Tesla did not offer any remedy. Tesla's failure to honor its express warranty constitutes a breach of the express warranty.

28. **WHEREFORE, Plaintiff demands judgment against Tesla, Inc. for all amounts paid under the Retail Installment Sale Contract, consequential damages including lost Turo business income, and all other damages proven at trial.**

## COUNT II — TENNESSEE MOTOR VEHICLE QUALITY ASSURANCE ACT Tenn. Code Ann. § 55-24-101 et seq. Tesla, Inc.

29. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

30. The Tennessee Motor Vehicle Quality Assurance Act — commonly known as the Tennessee Lemon Law — provides that a new motor vehicle that fails to conform to the manufacturer's warranty and is not repaired after a reasonable number of attempts entitles the consumer to a replacement vehicle or a full refund. Tenn. Code Ann. § 55-24-103.

31. The 2023 Tesla Model Y is a new motor vehicle within the meaning of the Act. Tenn. Code Ann. § 55-24-102(6).

32. The battery defect substantially impairs the use, value, and safety of the vehicle within the meaning of the Act. A battery that causes a complete loss of drive power within eight months of purchase and that consistently underdelivers its warranted range substantially impairs the use and safety of the vehicle.

**33.** Tesla was provided notice of the defect and failed to repair or replace the vehicle within a reasonable number of attempts — specifically, Tesla made no repair attempt and provided no remedy whatsoever.

**34.** Under the Act, Plaintiff is entitled to a replacement vehicle or a full refund of the purchase price, including all collateral charges. Tenn. Code Ann. § 55-24-103(a). Plaintiff is also entitled to recover reasonable attorney fees. Tenn. Code Ann. § 55-24-107.

**35. WHEREFORE, Plaintiff demands judgment against Tesla, Inc. for a replacement vehicle or full refund under Tenn. Code Ann. § 55-24-103, plus attorney fees under Tenn. Code Ann. § 55-24-107.**

## COUNT III — MAGNUSON-MOSS WARRANTY ACT 15 U.S.C. § 2301 et seq.

### Tesla, Inc.

**36.** Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

**37.** The Magnuson-Moss Warranty Act governs warranties on consumer products. The 2023 Tesla Model Y is a consumer product as defined under the Act. Tesla's Battery and Drive Unit Warranty is a written warranty within the meaning of 15 U.S.C. § 2301(6).

**38.** Tesla failed to comply with its obligations under its written warranty. Tesla failed to repair or replace the defective battery. Tesla failed to provide any remedy upon Plaintiff's warranty claim.

**39.** Plaintiff is entitled to bring a civil action for damages under 15 U.S.C. § 2310(d), including recovery of all damages caused by the warranty breach and mandatory attorney fees and costs on a successful claim under 15 U.S.C. § 2310(d)(2).

**40.** WHEREFORE, Plaintiff demands judgment against Tesla, Inc. for all damages proven at trial, plus mandatory attorney fees and costs under 15 U.S.C. § 2310(d)(2).

## COUNT IV — TENNESSEE CONSUMER PROTECTION ACT Tenn. Code Ann. § 47-18-101 et seq. Tesla, Inc.

**41.** Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

**42.** The Tennessee Consumer Protection Act prohibits unfair and deceptive acts and practices affecting the conduct of trade or commerce. Tenn. Code Ann. § 47-18-104. The Act provides for treble damages for willful violations. Tenn. Code Ann. § 47-18-109(a)(3).

**43.** Tesla engaged in unfair and deceptive acts and practices by selling the 2023 Model Y with a battery defect Tesla knew or should have known existed, while simultaneously suppressing range complaint investigations through a secret internal team — as documented by Reuters in July 2023. Tesla's willful sale of a vehicle with a known, systemic battery defect while actively suppressing consumer complaints about that exact defect constitutes an unfair and deceptive trade practice within the meaning of the Act.

**44.** Tesla's conduct was willful within the meaning of Tenn. Code Ann. § 47-18-109(a)(3), entitling Plaintiff to treble damages. The total damages exposure before trebling — including amounts paid under the contract, lost Turo rental income, and consequential damages — exceeds $50,000. After trebling, the exposure exceeds $150,000.

**45.** Tesla is also liable for attorney fees and costs under Tenn. Code Ann. § 47-18-109(e)(1).

14

**46. WHEREFORE, Plaintiff demands judgment against Tesla, Inc. for actual damages trebled pursuant to Tenn. Code Ann. § 47-18-109(a)(3), plus attorney fees and costs.**

## COUNT VI — DECLARATORY JUDGMENT

### (Unenforceability of Arbitration Provision)

### Against Defendant Tesla, Inc.

Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

**47.** A present and actual controversy exists between Plaintiff and Defendant Tesla, Inc. concerning the enforceability of the arbitration provision contained in the Tesla Motor Vehicle Order Agreement.

**48.** Tesla's arbitration provision is unenforceable for multiple independent reasons:

**49.** First, the arbitration clause is substantively unconscionable because it imposes an extreme limitation of liability — capping Plaintiff's recovery at approximately $1,450 on a $60,000+ vehicle — while imposing no corresponding limitation on Tesla's remedies. Such extreme non-mutuality renders the arbitration clause unenforceable under Tennessee law.

**50.** Second, the arbitration clause is procedurally unconscionable because it is contained in a non-negotiable contract of adhesion presented on a take-it-or-leave-it basis to a consumer purchaser with no meaningful opportunity to bargain.

**51.** Third, enforcement of the arbitration clause would operate as a prospective waiver of Plaintiff's statutory rights under the Tennessee Motor Vehicle Quality Assurance Act and the Magnuson-Moss Warranty Act, including statutory remedies and attorney fee provisions, which cannot be waived in advance.

15

**52.** Fourth, Tesla waived any right to compel arbitration by failing to respond to Plaintiff's March 21, 2026 warranty demand and failing to invoke arbitration prior to this action.

**53.** Because the arbitration provision is unconscionable, unenforceable, and waived, Plaintiff is entitled to a declaratory judgment that this action may proceed in this Court.

**54. WHEREFORE, Plaintiff respectfully requests that this Court:**

- Declare the arbitration clause unenforceable;

- Declare that Plaintiff may proceed in this Court;

- Deny any motion to compel arbitration;

- Grant such other relief as the Court deems just and proper.

### COUNT V — FTC HOLDER RULE Wells Fargo Auto

**55.** Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

**56.** The Retail Installment Sale Contract executed in connection with the purchase of the subject vehicle contains the required Federal Trade Commission Holder Notice pursuant to 16 C.F.R. § 433.2: 'ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.'

16

**57.** Wells Fargo Auto, as the assignee and holder of the consumer credit contract, is subject to all claims and defenses Plaintiff could assert against Tesla Motors TN, Inc. as seller, up to amounts paid by Plaintiff under the contract.

**58.** Plaintiff is entitled to assert all claims for warranty breach and deceptive trade practices against Wells Fargo Auto as holder of the contract, up to amounts paid by Plaintiff under the Retail Installment Sale Contract.

**59. WHEREFORE, Plaintiff demands judgment against Wells Fargo Auto as contract holder for all amounts paid by Plaintiff under the Retail Installment Sale Contract.**

## VI. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff Gideon J. Sipin respectfully requests that this Court:**

**1.** Enter JUDGMENT for Plaintiff against Defendant Tesla, Inc. for express warranty breach, violation of the Tennessee Motor Vehicle Quality Assurance Act, violation of the Magnuson-Moss Warranty Act, and violation of the Tennessee Consumer Protection Act;

**2.** Enter JUDGMENT for Plaintiff against Defendant Wells Fargo Auto as holder of the consumer credit contract under the FTC Holder Rule;

**3.** Award Plaintiff damages sufficient to obtain a REPLACEMENT VEHICLE — a 2023 Tesla Model Y or comparable model year — with a documented, warranted, and fully functional battery delivering its rated range, with continuation of financing at market value under terms no less favorable than the original agreement, or in the alternative direct Tesla, Inc. to provide such replacement as a condition of equitable relief. Plaintiff is willing to resume payments on a replacement vehicle at market value under terms no less favorable than the original agreement;

17

**4.** In the alternative, award Plaintiff RESCISSION of the contract and return of all amounts paid under the Retail Installment Sale Contract, including the $250.00 Order Fee and all monthly payments of $971.15 made prior to cessation of use of the vehicle due to safety concerns;

**5.** Award Plaintiff CONSEQUENTIAL DAMAGES for lost Turo rental business income and all other consequential damages proven at trial;

**6.** Award Plaintiff TREBLE DAMAGES against Tesla, Inc. under Tenn. Code Ann. § 47-18-109(a)(3) for willful violation of the Tennessee Consumer Protection Act;

**7.** Award Plaintiff ATTORNEY FEES AND COSTS under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), the Tennessee Motor Vehicle Quality Assurance Act, Tenn. Code Ann. § 55-24-107, and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(e)(1);

**8.** Order Wells Fargo Auto to CEASE any adverse credit reporting against Plaintiff arising from the cessation of use of this defective vehicle due to safety concerns, pending resolution of this action to the extent permitted by law.

**9.** Grant such OTHER AND FURTHER RELIEF as this Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff Gideon J. Sipin hereby demands a trial by jury on all issues so triable in this action.

**Respectfully submitted, April 22, 2026**

Gideon J. Sipin
Plaintiff — Pro Se
5200 Meadow Brook Road
Birmingham, Alabama 35242
Tel: 205-482-0822
gideonsipin@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on ___Apr 22___, 2026, I served a true and correct copy of the foregoing Complaint upon Defendants by depositing the same in the United States Mail, first class postage prepaid, addressed as follows:

**Tesla, Inc.**
c/o Registered Agent: C T Corporation System
300 Montvue Road
Knoxville, TN 37919-5546

**Wells Fargo Bank. N.A. d/b/a Wells Fargo Auto**
c/o Registered Agent: C T Corporation System
300 Montvue Road
Knoxville, TN 37919-5546

Gideon J. Sipin